**In the Matter of Pedro S. MARTINEZ, Jr.**

No. 381S58.

Supreme Court of Indiana.

Feb. 24, 1982.

No appearance entered for respondent.

Sheldon A. Breskow, Executive Dir., Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## PER CURIAM.

This disciplinary action is before us on a two count Verified Complaint for Disciplinary Action filed by the Disciplinary Commission of the Indiana Supreme Court. Pursuant to Admission and Discipline Rule 23, this cause was heard before a Hearing Officer who has submitted his "Findings of Fact and Conclusions of Law" for this Court's consideration. During the course of the proceedings to date, the Respondent has been duly served with the Verified Complaint and Pre-Hearing Entry and Order, given notice of the final hearing date of this matter, and served with all other orders and notices. Respondent failed to appear in person or by counsel at the hearing of this cause and has not petitioned for review of the Hearing Officer's Findings.

There being no objection, we now adopt and accept as our own the Findings of Fact submitted by the Hearing Officer. Accordingly, we now find that the Respondent, Pedro S. Martinez, Jr. was admitted to practice in the State on December 12, 1973. In July, 1978, John Lee employed Respondent to represent him in a land sales contract suit entitled *Miles Homes of Indiana, Inc. v. John W. Lee and Margaret Lee, and Harrah Plumbing and Heating Service Co., Inc.*, in the Vigo Superior Court, Cause No. S–C–77–1132.

After the Respondent became attorney of record in the lawsuit he stated to Lee that the matter could be settled. Thereafter, Lee made six payments to the Respondent between August 28, 1978, and January 4, 1979, which were to be applied toward settlement of the lawsuit. These payments totalled $5,410.00. Three payments were made by cashier's checks which state on their face "Pay To The Order Of Attorney, Pedro Martinez for Attorneys Harrah Plumbing or Miles Homes". Lee stated he purposely had the cashier's checks drafted in that manner as he was suspicious of the Respondent.

Attorney Arnold Brames represented Harrah Plumbing. Brames spoke with the Respondent in the Vigo County Courthouse about settlement of the case and the Respondent stated he had about $5,000.00 available to him for that purpose. Attorney Louis Britton represented Miles Homes in the aforementioned lawsuit. Britton discussed settlement with the Respondent and corresponded with Respondent on the same subject. One of the letters Britton forwarded to the Respondent stated that it was Britton's impression the Respondent had $5,400.00 available to him for the purpose of settlement. However, the case was not settled.

On August 30, 1978, the Respondent cashed a check given to him by Lee for settling the aforesaid lawsuit at the Indiana National Bank by endorsing it and placing the savings account number of Norma Martinez beneath the signature. One hundred dollars ($100.00) of said check was placed in the account of Norma Martinez, 5704 Ralston Avenue, Indianapolis, Indiana 46220, and $100.00 was retained in cash. On December 20, 1978 the Respondent cashed another cashier's check given to him for settling the aforementioned lawsuit at the Terre Haute First National Bank. Five hundred dollars ($500.00) of this check was deposited into the personal savings account of the Respondent and the remaining $200.00 was retained in cash.

On March 22, 1979, the Vigo Superior Court entered final judgment in the case and ordered the realty in question be sold in foreclosure. Following the adverse judgment the Respondent filed an appeal on behalf of Lee in the Indiana Court of Appeals, Cause No. 1–879–14–219. In January of 1980, while the appeal remained undecided, Respondent left the United States and was in the Philippines. On August 14, 1980, in its published opinion, 408 N.E.2d 597, the Court of Appeals stated in part that Lee's appeal had been dismissed for "various deficiencies".

Lee attempted on numerous occasions to contact the Respondent but had difficulty reaching him. When he was successful in speaking with the Respondent, Lee was assured that the Respondent still had the settlement money and would return it to Lee. The Respondent has not returned to Lee any portion of the $5,410.00 Lee tendered to him to settle the aforesaid lawsuit.

In accordance with the foregoing findings of fact, we conclude that the Respondent engaged in conduct involving fraud, deceit and misrepresentation by inducing Lee to advance him $5,410.00 for the purpose of settling the lawsuit and then failing to do so, in violation of Disciplinary Rule 1–102(A)(4) of the *Code of Professional Responsibility for Attorneys at Law.* The Respondent, by taking $5,410.00 of his client's money to settle a lawsuit and then depositing a portion of those funds in bank accounts other than his client's trust account and by taking an additional portion of those funds in cash, commingled his client's money with his own in violation of Disciplinary Rule 9–102(A). The Respondent's conduct, as set out above, when viewed in toto, was prejudicial to the administration of justice and adversely reflects on his fitness to practice law in violation of Disciplinary Rules 1–102(A)(5) and (6) of the *Code of Professional Responsibility of Attorneys at Law.*

The evidence brought out under Count II of the Complaint establishes that on February 19, 1979, Danny and Annette Justus met with the Respondent and discussed with him filing bankruptcy. At the time of said meeting Danny Justus was the defendant in a lawsuit filed by American Security Company. The Respondent informed the Justuses that his fee would be $450.00 to file a joint bankruptcy. He also stated that he would enter his appearance on behalf of Danny in the American Security lawsuit although he was not employed to do so.

Respondent was given a personal check for $200.00 at that time as a retainer fee in the bankruptcy. Respondent held the check without cashing it and requested that his clients pay him by money order or in cash. On March 2, 1979, Danny and Annette Justus gave him a money order for $200.00 to replace the aforementioned personal check.

On March 7, 1979, Respondent filed an appearance on behalf of Danny Justus in *American Security Corporation v. Danny Justus.* He withdrew from that cause on May 11, 1979, stating to his clients that it was not ethical for him to represent them in both the bankruptcy and the American Security lawsuit.

On June 3, 1979, Danny and Annette Justus mailed to the Respondent two money orders totaling $250.00. These funds represented the balance of the fee quoted by the Respondent for the joint bankruptcy.

On August 3, 1979, a default judgment was entered against Justus who was without counsel. Pursuant to that judgment, the aforementioned plaintiff filed proceedings supplemental on January 9, 1980; the hearing thereon was scheduled for January 21, 1980. On January 21, 1980, the trial court entered a garnishment order against Danny Justus. Later that same day, Respondent, on behalf of Danny Justus, filed a bankruptcy petition in the United States District Court for the Southern District of Indiana, Cause No. 80–226.

Although the Respondent was retained to file the bankruptcy on February 19, 1979, and was paid in full for that service on June 3, 1979, he did not file the petition until January 21, 1980. He stated to Danny and Annette Justus on more than one occasion that he could not file the bankruptcy until he knew what the plaintiff's attorney

fee would be in the American Security lawsuit. This bankruptcy was not filed as a joint bankruptcy and the Respondent represented to the Court that his attorney fee was $300.00. When informed by Annette Justus that he had received $450.00, the Respondent stated that $150.00 should be considered as his fee for his participation in *American Security v. Danny Justus.*

Several days after the bankruptcy petition was filed the Respondent informed Annette Justus over the telephone that he was going to the Philippines, but would return in time to represent Danny Justus in the bankruptcy proceedings. Danny and Annette Justus never again spoke with the Respondent. On May 30, 1980, Justus obtained a discharge in bankruptcy without the assistance of Respondent or counsel. The Respondent did not refund to Danny and Annette Justus any portion of the $450.00 he received as a fee for representing them in a joint bankruptcy.

By leaving the country in the midst of the bankruptcy proceeding the Respondent neglected a legal matter entrusted to him, improperly withdrew from a case without notifying his client or insuring that his client had other counsel, and failed to carry out a contract of employment, in violation of Disciplinary Rules 2–110(A)(2), 6–101(A)(3) and 7–101(A)(2) of the *Code of Professional Responsibility for Attorneys at Law.* The Respondent, by withdrawing from employment without promptly returning the unearned portion of the fee, violated D.R. 2–110(A)(3). Furthermore, Respondent's conduct, as set out above, is prejudicial to the administration of justice and adversely reflects on his fitness to practice law in violation of Disciplinary Rules 1–102(A)(5) and (6) of the *Code of Professional Responsibility for Attorneys at Law.*

We must next determine what disciplinary sanction will be appropriate in light of the misconduct found in this case. The facts before us establish that Respondent engaged in a course of conduct which shows a callous disregard for his clients' interests and the rules of professional ethics. Respondent failed to appear in behalf of his clients, neglected their cases, withdrew without notifying or assuring his clients of continued representation and he retained a fee to which he was not entitled. But Respondent's misconduct did not stop there; he took more than $5,000.00 of his client's funds under the pretext of affecting a settlement and retained the same for his own funds. This misrepresentation is despicable under any circumstances; however, it is particularly abhorrent in the context of an attorney-client relationship whose essence is trust and fiduciary responsibility. The extremely serious nature of the misconduct proven in this case warrants but one sanction, disbarment.

Accordingly, by reason of the misconduct found under the two-count Verified Complaint filed in this cause, it is ordered that the Respondent, Pedro S. Martinez, Jr., be and he hereby is disbarred as an attorney in the State of Indiana.

Costs of this proceeding are assessed against Respondent.